UNITED STATES *v.* RAILWAY EXPRESS AGENCY, INC., AGENT FOR BLUE STOCK FUR RANCH (No. 4318)[1]

[1] C. A. D. 161.

United States Court of Customs and Patent Appeals, March 31, 1941

Charles D. Lawrence, Acting Assistant Attorney General (William J. Vitale, special attorney, of counsel), for the United States.
William Whynman for appellee.

[Oral argument December 13, 1940, by Mr. Vitale and Mr. Whynman]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, affirming the judgment of the single judge to

whom was assigned for trial an appeal by the importer from the finding of dutiable value made by the appraiser of merchandise at the port of Rouses Point, N. Y., of an importation of 81 live mink from Canada made in 1936 and subject to the provisions of the Tariff Act of 1930.

The decision of the appellate division reads:

This is an appeal from the decision of Judge Evans in determining the dutiable value of certain minks imported from Canada. For the reasons elaborately and carefully stated in the opinion of Judge Evans below, whose findings of fact and conclusions of law we hereby adopt as our own, his judgment is affirmed in all respects.

So, while, in a technical sense, this is a review of the decision of the appellate division, we must look wholly to the decision of the single judge for the findings upon which the conclusion rests.

While that decision contains a comprehensive review of the evidence in the case, some of the findings of fact which necessarily are implicit in the decision are not stated in an explicit manner and an orderly discussion of the issues raised here necessitates our stating some of them more specifically. In so doing we use our own phraseology in most instances, but in no case do we make any findings contrary to those expressed or necessarily implied in the decision, because it is not our province to make findings of fact or to weigh the evidence in reappraisement cases. So far as facts are concerned, we are limited to determining whether there is any substantial evidence to support the findings below.

The trial judge definitely held that "the preponderance of the evidence supports the claim that the dutiable value of these animals is the export value as defined by the statute, * * *." At another point it was held that "the record indicates that the export value was no higher than the foreign-market value as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930." It was also held "on the preponderance of the evidence" that five trios of mink, a trio consisting of one male and two females, constitute the usual wholesale quantity of mink, such as those involved were found to be, and the animals were held appraisable for duty at $40 each.

Error has been assigned by the Government respecting those holdings and they are hereinafter discussed.

The issue most strongly stressed before us grows out of certain of the Government's assignments of error respecting the denial of a motion made before the trial judge to dismiss importer's appeal for reappraisement.

Before discussing it, a general statement relative to the transaction will be conducive to an understanding of the controversy.

"Blue Stock Fur Ranch," located in the vicinity of Woodstock, N. Y., is stated to be the real party in interest here. The precise

legal character of Blue Stock Fur Ranch (that is, whether it was a corporation or partnership or merely a business name under which an individual or individuals operated) does not appear from the record but this is not regarded as particularly material so far as any issue here is concerned. The record discloses that one Louis T. Later, described by the trial judge as an officer of the Blue Stock Fur Ranch, conducted the negotiations and purchased the animals from one Dr. Joseph E. LaForest, a dentist of Quebec, Canada, who was also engaged in the raising, breeding, and pelting of minks and foxes. Mr. Later testified that he visited Dr. LaForest's mink ranch, after having visited other such ranches in Eastern United States and other points in Canada, and that the purchase was made in October, 1936 (an affidavit of Dr. LaForest, received in evidence without objection on the part of the Government, gives the date as on or about October 21, 1936), after he had inspected the animals on the ranch, at the price of $40 per animal. It is stated by both Later and LaForest that the animals were kits—that is, young animals which had not gone through a mating season. There is a controversy respecting this fact which will be referred to hereinafter. Later further testified that he was not prepared to take care of that many animals on his ranch at that particular time and that he arranged with LaForest to keep and care for them until the latter part of the following December, agreeing to pay an additional $25 per animal which was to cover "the duty, the expressage, feed, care, the handling, the making of the crates in which to ship them, the trucking, and so on"; that he paid $500 at the time the transaction was closed, and subsequently paid the remainder of $4,700 by check upon his acceptance of the shipment.

The consumption entry was filed December 17, 1936, by Railway Express Agency as nominal consignee, being signed by an attorney for the company. The consular invoice bears date of December 15, 1936, the certificate thereto signed by the United States consul being dated December 16, 1936.

The motion to dismiss the appeal for reappraisement made after the importer had concluded his or its introduction of evidence was as follows:

Mr. VITALE. The Government at this time moves that the appeal to reappraisement involved in this case be dismissed, upon the grounds that the plaintiff has failed to comply with the requirements of the Tariff Act of 1930 insofar as it relates to the proper making out of invoice in importations of this and all other kinds.

The first section we believe has been violated is Section 481 of the Tariff Act of 1930, which among other things states that:

All invoices of merchandise to be imported into the United States shall set forth—
(5) The purchase price of each item in the currency of the purchase, if the merchandise is shipped in pursuance of the purchase or an agreement to purchase.

And number 8:

All charges upon the merchandise, itemized by name and amount when known to the seller or shipper; or all charges by name (including commissions, insurance, freight, cases, containers, coverings, and cost of packing) included in the invoice prices when the amounts for such charges are unknown to the seller or shipper.

And under 10 it states:

Any other facts deemed necessary to a proper appraisement, examination, and classification of the merchandise that the Secretary of the Treasury may require.

And under Section 482, which relates to certified invoices, etc., Section 485 relates to the form and contents of entries, and requires a declaration to the effect that the prices set forth in the invoices are the prices paid by the importer, etc.

And Section 501 states that no such appeal by the consignee or his agent shall be deemed valid unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise.

Upon those grounds, your Honor please, we move that the appeal to reappraisement here be dismissed, because it is quite apparent that the invoice in this case does not contain any of the transaction[s] testified to by witnesses who testified here this morning.

The trial judge reserved action on the motion until his final decision and the Government then introduced in evidence, "without prejudice" to the motion to dismiss, the report of a Treasury representative.

In disposing of the motion to dismiss, the trial judge said:

At the close of the case on the part of the plaintiff the Government attorney moved to dismiss the appeal to reappraisement upon the ground that the plaintiff had failed to comply with the requirements of the Tariff Act of 1930 (sections 481, 482, 485, and 501). In short, the Government claims that the invoice does not disclose the facts deemed necessary to a proper appraisement, examination, and classification of the merchandise. In this connection we note that article 277 of the Customs Regulations of 1931 provides that collectors will reject certified invoices which are not made in accordance with the regulations. It is presumed that the collector did his duty in the instant case, and followed the regulations. As he did not reject the invoice the presumption is that he found sufficient information thereon to comply with the statute and the regulations thereunder. The motion to dismiss is therefore denied.

The appellate division, as has been indicated, made no specific reference to the issue so raised, and the Government assigns error, contending that the division should have either dismissed the appeal for reappraisement or reversed the judgment and remanded the case to the trial judge with instructions to him to dismiss the same.

The specific provisions of sections 481, 482, 485, and 501, regarded as pertinent by counsel for the Government, are quoted in their brief as follows:

SEC. 481. INVOICE—CONTENTS.

(a) *In General.*—All invoices of merchandise to be imported into the United States shall set forth—

\* \* \* \* \* \* \*

(3) A detailed description of the merchandise, including the name by which each item is known, the grade or quality, and the marks, numbers, or symbols under which sold by the seller or manufacturer to the trade in the country of

·₁ ortation, together with the marks 'and numbers of the packages in which the i..rchandise is packed;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(8) All charges upon the merchandise, itemized by name and amount when known to the seller or shipper; or all charges by name (including commissions, insurance, freight, cases, containers, coverings, and cost of packing) included in the invoice prices when the amounts for such charges are unknown to the seller or shipper;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(10) Any other facts deemed necessary to a proper appraisement, examination, and classification of the merchandise that the Secretary of the Treasury may require.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 482. CERTIFIED INVOICE.

(a) *Certification in General.*—Every invoice covering merchandise exceeding $100 in value shall, at or before the time of the shipment of the merchandise, or as soon thereafter as the conditions will permit, be produced for certification to the consular officer of the United States—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) *Declaration.*—Such invoices shall have indorsed thereon, when so produced, a verified declaration, in a form prescribed by the Secretary of the Treasury, stating whether the merchandise is sold or agreed to be sold, or whether it is shipped otherwise than in pursuance of a purchase or an agreement to purchase, that there is no other invoice differing from the invoice so produced, and that all the statements contained in such invoice and in such declaration are true and correct.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 485. DECLARATION.

(a) *Requirement—Form and Contents.*—Every consignee making an entry under the provisions of section 484 of this Act shall make and file therewith, in a form to be prescribed by the Secretary of the Treasury, a declaration under oath, stating—

(1) Whether the merchandise is imported in pursuance of a purchase or an agreement to purchase, or whether it is imported otherwise than in pursuance of a purchase or agreement to purchase;

(2) That the prices set forth in the invoice are true, in the case of merchandise purchased or agreed to be purchased; or in the case of merchandise secured otherwise than by purchase or agreement to purchase, that the statements in such invoice as to value or price are true to the best of his knowledge and belief;

(3) That all other statements in the invoice or other documents filed with the entry, or in the entry itself, are true and correct; and

(4) That he will produce at once to the collector any invoice, paper, letter, document, or information received showing that any such prices or statements are not true or correct.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

SEC. 501. NOTICE OF APPRAISEMENT—REAPPRAISEMENT.

\*　\*　\* No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise. \*　\*　\*

The contentions of the Government upon this point have necessitated a detailed study of the entry, the consular invoice, and other pertinent papers.

As has been stated, the consumption entry in this case was made by Railway Express Agency as nominal consignee, and the authority of the agency to make such entry is not in question, only the legal sufficiency of the declaration therein being attacked. It is noted from a paper entitled "MERCHANDISE RECEIPT," dated December 16, 1936, executed by the Canadian Pacific Express Co., that the involved merchandise was addressed to "Agent Ry Ex Agency for delivery to Blue Stock Fur Ranch Woodstock via Kingston NY." Presumably the consular invoice, which is entitled "INVOICE OF PURCHASED MERCHANDISE," was filed with the entry. It is not complained that there was a failure to comply with the quoted provisions of section 482 (a), supra, so far as producing an invoice is concerned. Here again the attack is upon the legal sufficiency of the invoice.

The mink item was one of twenty items listed on the consumption entry sheet. The items cover various kinds of merchandise, evidently intended ultimately to go to various parties in different parts of the United States. For example, there were listed "Silk Samples" destined for a party in Paterson, N. J.; "Stove Parts" for a party in Whitehall, N. Y.; "Lacrosse Sticks" for a party in Baltimore, Md.; "Printed matter" for Sun Life Assurance Co. at various cities, such as Louisville, Ky., Wilmington, Del., Nashville, Tenn., and Washington, D. C.; a "Newfoundland Puppy" for a party at New Canaan, Conn.; "100-Yds Splints" for a party at Albany, N. Y.; "Make-Up Mirrors" and "Cigarette Cases" for a party at New York, N. Y.; "Clothing" for a man and wife at Albany, N. Y.; "Chinaware" for a party at Des Moines, Iowa, etc. Some of the items were listed in the column headed "Rate" as "Free"; others stated the respective paragraphs and rates of duty claimed as applicable.

The entry item here involved recites "Inv. 490 12/16/36. Quebec, Que. BLUE STOCK FUR RANCH., crates Kingston N. Y. 81-Live Mink," and the entered value was stated to be [$] 3,240 "in U. S. Money," paragraph 715 of the Tariff Act of 1930 which provides a duty of 15 per centum on "Live animals, vertebrate and invertebrate, not specially provided for," being stated as the applicable tariff paragraph. The entry indicates that $486 was paid as duty on the mink December 17, 1936, on which date the "declaration of nominal consignee" appears to have been "signed and declared" by the attorney for the Railway Express Agency before an official, either a "Deputy Collector or a Notary Public." The declaration so signed is in the usual (printed) form prescribed by regulation for nominal consignees.

The consular invoice on file with the papers in the case recites, "81 Live minks"; "Purchase Price Per Unit $40.00"; "Total Invoice Price

[$] 3240"; "Homemarket price same as above." "Consular fees [$] 2.50." It also contains a recital of permits for shipment and entry issued, respectively, by the Canadian authority and the United States Department of Agriculture.

The summary of entered value, examination and appraisement attached to the consular invoice shows that the acting appraiser on January 25, 1937, appraised the mink at $58 each, United States currency. The advance in terms of total value is not stated. The column of the summary headed "Dutiable packing charges" has a check mark, ✓, in red ink, and a note printed above the column reads, "(A check mark (✓) indicates that appraisement, classification, or quantities are as entered or that packing charges are believed to be correct.)"

It is proper to state at this point that the Government concedes that a finding by the trial judge that only 80 mink are, in fact, here involved (one of the 81 included in the importation being a replacement of one lost from some former shipment) is correct.

There is no contention that either the printed form used for the consular invoice or that used for the entry was in any way irregular, the complaint being limited to the absence of certain matters which it is claimed should have been written thereon.

The brief on behalf of the Government complains, first, that the invoice does not set forth "A detailed description of the merchandise, including the name by which each item is known, the grade or quality, and the marks, numbers, or symbols under which sold by the seller * * *," and, in this connection, it is pointed out that there is a "conflict of evidence upon the question of gender, and whether the involved mink consisted entirely of kits." The theory of the Government, apparently, is that there would be a difference in value between older mink whose breeding qualities had been proved and kits, and also a difference in value between males and females. Hence, it seems to be urged that the invoice should have shown the age and sex of each animal.

The theory respecting values depending upon age and sex may be a sound one, but under the finding of fact, implicit in the decision of the trial judge and approved by the appellate tribunal, we fail to see its importance here.

The trial judge recognized the conflict in the evidence and stated it. It grew out of statements in the report of the special Treasury agent to the effect that the shipper, LaForest, stated to him that there were 8 adult male and 14 adult female in the shipment, the rest being kits, and that the price agreed upon was $58 each for the mink. This was in conflict with statements in the testimony of Later and the affidavit of LaForest to the effect that all the animals were kits and that the agreed purchase price was $40 per animal. The trial judge

did not specifically state in words that the testimony and affidavit (rather than the agent's report) were accepted as establishing the fact that the involved mink were kits, but certainly this must be regarded as implicit in his holding, and that being purely a question of fact, exclusively within the jurisdiction of the tribunals of the Customs Court, it is not within the province of this court to review such finding, there being some substantial evidence to support it.

Accepting that as a fact, there would, of course, have been no occasion, based upon any idea of differences in value by reason of age or sex, to have stated the age and gender of each animal on the invoice or in the entry. It may be remarked that the report of the special agent did not suggest that LaForest indicated to him that there were differences in value between the respective animals shipped, and evidently the local appraiser did not find any differences since he valued each animal for duty purposes at $58.

Secondly, the Government contends that the invoice was fatally defective because it failed to give an itemized statement of charges. The brief states this contention as follows:

2. According to the evidence submitted by the importer, $25 of the purchase price of $65 on each animal was for the purpose of covering charges for duty, expressage, feed, care, handling of the animals, crating, trucking and labor, etc. This charge of $25 is not noted either upon the invoice or upon the entry. None of the charges thus agreed upon between the purchaser and seller, except consular fees of $2.50, has been separately enumerated, although, according to the seller's affidavit, Exhibit 2 (R. 29), he knew of such items and could have itemized them by name and amount at the time of shipment. Thus, if the purchase price was $40 per animal, with the additional $25 in charges per animal, as claimed, such charges should have been itemized on the invoice. If, on the other hand, the purchase price was $58 per animal, as reported by the Treasury representative (R. 35), then that figure, as well as the remaining charges, should have been so itemized. Failure of the invoice to show these items is unquestionably in violation of the provisions of section 481 (a) (8), of the Tariff Act of 1930, which expressly provides that all invoices of merchandise to be imported into the United States shall set forth "All charges upon the merchandise, itemized by name and amount when known to the seller or shipper; * * *."

In passing upon this phase of the controversy, it is necessary to bear in mind that the export value was found to be the dutiable value and, in our opinion, there is substantial evidence to support this finding.

The statutory definition of export value is as follows:

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It will be observed that in determining dutiable value under this section, there is to be added to the price at which the merchandise is freely offered, etc., "when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

In his affidavit LaForest stated:

The crates in which the Kits were shipped remained my property and were to be returned to me after delivery of the minks.

The report of the Treasury representative, after reciting certain figures, states:

It is true that there would be some expense in crates for shipping, but Dr. LaForest made no claim that he made any extra charge for the crates or boxes and I found no evidence of any such charge in the case of other shipments.

In view of these statements, we are of the opinion that in this case there was no occasion for stating the cost of containers and coverings on the invoice.

It may be said at this point that one of the complexities in this case grows out of the fact that counsel for the Government *in their brief* challenge the obviously implicit finding of the trial judge that the *per se* purchase price of the animals was $40 per unit. They insist it was $65 per unit. Except inferentially (as implicit in the attack upon the sufficiency of the invoice and entry), that question is not raised by any assignment of error. The finding of *dutiable value* is specifically challenged by assignment of error, but not the *purchase price*.

So far as any "other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States," are concerned, the record does not disclose that there were any. As has been stated, there is implicit in the decision of the trial judge the finding that the *per se* purchase price of the animals was $40 each, and the $25 per animal, amounting to a total for 80 animals of $2,000, was to cover feeding and care from the time of purchase to the time of shipment, trucking to the express office from the ranch where the mink were raised, and sold, and expressage from the point of shipment in Canada to the United States port of entry; also $486 was paid as duty from same. As we view it, those were not costs, charges or expenses required to be included in the dutiable value.

The question is, therefore, whether the failure to state such items on the invoice and recite them in the entry (alleged defect in the entry declaration being the fourth ground of attack made by the Government as to the sufficiency of the papers) destroyed the right of the importer to appeal for reappraisement and required the dismissal of the appeal.

A somewhat analogous question was presented in the case of *United States* v. *F. B. Vandegrift & Co. et al.*, 26 C. C. P. A. (Customs) 360, C. A. D. 42. The merchandise there consisted of three machines used in the manufacture of glass ampoules. The purchaser paid $1,800 each for them. He also paid $1,200 each as a sum which the importer contended was a license fee, while the Government contended it was a part of the purchase price of the machines. The merchandise was valued by the local appraiser on the basis of foreign value, and upon appeal this basis was sustained by the trial judge, but upon appeal to the appellate division of the Customs Court the latter found there was no foreign, export, or United States value, and held that the only basis for appraisement was cost of production, as defined by section 402 (f) of the Tariff Act of 1930, and such an appraisement was made. When the case reached this court it was contended by the Government that the $1,200 item should have been included in the addition for profit required to be made in computing the cost of production. We found that there was some substantial evidence to support the finding below to the effect that the $1,200 items were not profit items which were required to be included in determining the dutiable value.

The particular analogy between that case and the instant case is that there the Government attacked the sufficiency of the invoices and entries because the $1,200 items were not referred to in either, and there, as here, invoked the provisions of section 501, *supra*, insisting that the appeals for reappraisement should be dismissed. Since the items were held not to be a part of the purchase price of the merchandise, we held, in effect, that the failure to refer to them on the invoices and entries was not fatal, and that the appeals for reappraisement were valid.

The principle there announced we regard as applicable here.

There remains one other contention upon this phase of the case which is stated in the Government brief as follows:

3. What purports to be the declaration of the seller or shipper, endorsed upon the consular invoice in this case, is *unsigned*. That is clearly a violation of section 482 (a) and (b), of the Tariff Act of 1930, which provides in part that all invoices must bear a "verified declaration." [Italics quoted.]

The declaration shows upon its face that it is on Form 128, the form purporting to be prescribed under the authority of section 482 (b), *supra*. No objection is made on the ground that the proper form was not used, nor is it suggested that the declaration should have been verified by oath or affirmation, and that question is not before us. The sole objection made is that the signature of Dr. LaForest does not appear on a line immediately below the body of the declaration above the printed word "seller." While no signature appears on that line, we observe that in the body of the declaration there appears, *inter alia*,

"I, Dr. J. E. LaForest acting in the capacity described below, truly declare * * *." The name was written with pen and ink and the signature is the same and is in the same handwriting as that appearing at three other places on the invoice. The consular certificate bears the signature of "H. L. Milbourne Consul of the United States of America," and states:

I do hereby certify that this invoice was this day produced to me by the signer of the above declaration.

I do further certify that I am satisfied that the person making the declaration above is the person he represents himself to be, * * *.

With respect to the *location* of a signature on documents which require signature, numerous authorities are found to the effect that while the signature should be placed at the foot of the instrument, it is not necessary that the signature appear at the end of the instrument, and that if the name of the party whose signature is required is written by him in any part of the instrument, for the purpose of authenticating it, as at the head, in the body, or at the end of the instrument, it is a sufficient signature. See 58 C. J., 724, and cases cited in the footnotes to the text as we have paraphrased it.

We are of opinion that the position taken by the Government upon this point is extremely technical and without merit.

We regard the appeal by the importer for reappraisement as having been valid, and hold that the appellate division did not commit error in sustaining the refusal of the trial judge to dismiss it.

With respect to contentions made by the Government relative to what constitutes a usual wholesale quantity of live mink kits, it is only necessary to say that there is, in our opinion, substantial evidence to support the court's finding that such quantity consists of five trios, a trio consisting of 1 male and 2 females. We are also of the opinion that there is substantial evidence to support the finding that the export value, fixed at $40 per animal, was no higher than the foreign-market value.

No error of law being found, the judgment of the Customs Court is *affirmed*.